UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MICHAEL PITTMAN, n/k/a Maikijah
Ha'Keem,

        Plaintiff,

v.

LORI SWANSON; GOVERNOR DAYTON;
DENNIS BENSON; LUCINDA JESSON;
CAL LUDEMAN; GREG CARLSON;
KEVIN MOSER; DAVID PRESCOTT;
JANINE HEBERT; TOM LUNDQUIST;
ELIZABETH BARBO; LINDA
ANDERSON; KELLI MINOR; ROB ROSE;
DOMINIQUE WILSON; ALLISON
COLLINS; DEBBIE JAMES; TERRY
KNEISEL; SARA KULAS; JAMES
MARTINEZ; CRAIG BERG; VICKIE
ALDRIDGE; and RAMSEY COUNTY
SOCIAL SERVICES CORRINE MALASKE,
each sued in their individual capacity and
in their official capacity as employees of the
State Attorney General's Office, the
Governor's Office, and the Minnesota
Department of Human Services,

        Defendants.

Case No. 11-CV-3658 (PJS/TNL)

ORDER

---

JAMAAL CAREY,                                    Case No. 11-CV-3711 (PJS/TNL)

        Plaintiff,

v.

LORI SWANSON; GOVERNOR DAYTON;
DENNIS BENSON; LUCINDA JESSON;
CAL LUDEMAN; GREG CARLSON;
KEVIN MOSER; ERIC SKON; JANINE
HEBERT; TOM LUNDQUIST; ELIZABETH
BARBO; NANCY JOHNSON; TROY
SHERWOOD; TIM GORE; JENNIFER
JENNIGES; STACEY SONNEK; JULIE
ROSE; TERRY KNEISEL; SETH DOE; and
CLAY COUNTY SOCIAL SERVICES JANE
DOE, each sued in their individual capacity
and in their official capacity as employees
of the State Attorney General's Office, the
Governor's Office, and the Minnesota
Department of Human Services,

        Defendants.

| | |
|---|---|
| CHARLES A. TAYLOR, a/k/a Terrance A. Pettis, | Case No. 11-CV-3728 (PJS/TNL) |
| Plaintiff, | |
| v. | |
| LORI SWANSON; GOVERNOR DAYTON; DENNIS BENSON; LUCINDA JESSON; CAL LUDEMAN; GREG CARLSON; KEVIN MOSER; DAVID PRESCOTT; JANINE HEBERT; TOM LUNDQUIST; ELIZABETH BARBO; LINDA ANDERSON; KELLI MINOR; ROB ROSE; DOMINIQUE WILSON; ALLISON COLLINS; DEBBIE JAMES; TERRY KNEISEL; SARA KULAS; JAMES MARTINEZ; CRAIG BERG; VICKIE ALDRIDGE; and HENNEPIN COUNTY SOCIAL SERVICES NICOLE ARMSTRONG, each sued in their individual capacity and in their official capacity as employees of the State Attorney General's Office, the Governor's Office, and the Minnesota Department of Human Services, | |
| Defendants. | |

EARL STEPHAN McMOORE,                              Case No. 12-CV-0318 (PJS/TNL)

                        Plaintiff,

v.


LORI SWANSON; GOVERNOR DAYTON;
DENNIS BENSON; LUCINDA JESSON;
CAL LUDEMAN; GREG CARLSON;
KEVIN MOSER; DAVID PRESCOTT;
JANINE HEBERT; TOM LUNDQUIST;
ELIZABETH BARBO; LINDA
ANDERSON; KELLI MINOR; ROB ROSE;
DOMINIQUE WILSON; ALLISON
COLLINS; DEBBIE JAMES; TERRY
KNEISEL; SARA KULAS; TARA
OSBORNE; JANE STINAR; VICKIE
ALDRIDGE; and HENNEPIN COUNTY
SOCIAL SERVICES NICOLE
ARMSTRONG, each sued in their
individual capacity and in their official
capacity as employees of the State Attorney
General's Office, the Governor's Office, and
the Minnesota Department of Human
Services,

                        Defendants.

Over ten years ago, plaintiffs Maikijah Ha'Keem,[1] Jamaal Carey, Terrance A. Pettis,[2] and Earl Stephan McMoore each filed nearly identical lawsuits challenging the legality of various aspects of the Minnesota Sex Offender Program ("MSOP"). *See Pittman v. Swanson*, Case No. 11-CV-3658 (PJS/TNL) (D. Minn. Dec. 19, 2011); *Carey v. Swanson*, Case No. 11-CV-3711 (PJS/TNL) (D. Minn. Dec. 27, 2011); *Pettis v. Swanson*, Case No. 11-CV-3728 (PJS/TNL) (D. Minn. Dec. 29, 2011); *McMoore v. Swanson*, Case No. 12-CV-0318 (PJS/TNL) (D. Minn. Feb. 7, 2012). At about the same time, a class-action lawsuit was filed raising sweeping challenges to the operation of MSOP. *See Karsjens v. Minn. Dep't. of Human Servs.*, Case No. 11-CV-3659 (DWF/TNL). The *Karsjens* litigation, which spanned over a decade and involved three separate appeals to the United States Court of Appeals for the Eighth Circuit, ultimately ended in the dismissal of every claim for relief brought by the plaintiff class. Because Ha'Keem, Carey, Pettis, and McMoore were civilly committed to MSOP when the *Karsjens* lawsuit was filed, each

---

[1] After initiating this lawsuit, plaintiff Michael Pittman legally changed his name to Maikijah Ab'dul Ha'Keem. *In re the Application of Michael Dijon Pittman for a Change of Name*, Case No. 09-CV-13-687 (Minn. Dist. Ct. March 29, 2013). Ha'Keem recently filed a notice with the Court asking that future court orders reflect this name change. *Pittman* [ECF No. 46]. Consistent with his request, the Court will refer to the plaintiff himself as Ha'Keem, but to avoid confusion, the Court will refer to the case that the plaintiff filed as the *Pittman* case, as that is the name under which it was filed and by which it has been known for many years.

[2] Pettis is listed as Charles Taylor's "a/k/a," but the plaintiff refers to himself as "Pettis" throughout his original complaint, and the Court follows his lead.

-5-

was a member of that plaintiff class.  *See Karsjens v. Lourey*, 988 F.3d 1047, 1049 (8th Cir. 2021) (noting that the plaintiff class consists of those civilly committed to the MSOP).

The claims raised in *Karsjens* substantially overlapped with the claims raised by plaintiffs in these four lawsuits, and therefore these matters were stayed almost immediately after they were filed pending resolution of *Karsjens*.  *See Pittman*, [ECF No. 7]; *Carey*, [ECF No. 9]; *Pettis*, [ECF No. 8]; *McMoore*, [ECF No. 9].  After final judgment was entered in *Karsjens*, the Court lifted the stays, and each lawsuit was reviewed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Pursuant to that review, the Court dismissed the bulk of the claims brought by the four plaintiffs.  *See Pittman*, [ECF No. 26]; *Carey*, [ECF No. 28]; *Pettis*, [ECF No. 29]; *McMoore*, [ECF No. 25].

These cases are now back before the Court on defendants' motions to dismiss the remaining claims.  *See Pittman*, [ECF No. 29]; *Carey*, [ECF No. 31]; *Pettis*, [ECF No. 32]; *McMoore*, [ECF No.  28].  Carey, Pettis, and McMoore have not responded to the motions to dismiss their individual lawsuits; the Court therefore construes those motions to be unopposed.  Ha'Keem, however, has filed a responsive memorandum and an (unnecessary) "Motion to Not Dismiss the Complaint."  *Pittman*, [ECF No. 43]. Those five motions—the four motions to dismiss and Ha'Keem's motion not to dismiss—are now before the Court.

The failure of Carey, Pettis, and McMoore to respond to defendants' motions to dismiss provides adequate grounds for the Court to grant the motions and dismiss their lawsuits. *Christensen v. PennyMac Loan Servs.*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013) ("Plaintiff's failure to respond [to a motion to dismiss] amounts to a waiver, and on that basis alone, defendants' motion to dismiss should be granted."). But as mentioned above, the complaints in the four lawsuits now before the Court are nearly carbon copies of each other. The Court therefore has considered Ha'Keem's responsive arguments with respect to the claims raised by all plaintiffs, not only the claims raised by Ha'Keem. (For ease of discussion, the Court also will discuss Ha'Keem's responsive arguments as though they had been made by all four plaintiffs.)

Ultimately, though, the Court agrees with defendants that all of the remaining claims in these lawsuits must be dismissed. Most of the claims raised by Ha'Keem, Carey, Pettis, and McMoore were litigated in *Karsjens* or could have been litigated in *Karsjens*, and thus are barred by the doctrine of res judicata. With respect to the small number of claims that are raised in these lawsuits and that are not precluded by *Karsjens*, plaintiffs have failed to plead a viable claim for relief. Accordingly, the motions to dismiss will be granted.

## I.  BACKGROUND

As noted, the complaints in these matters are almost identical.  Each of the four complaints raises 23 identical causes of action.  *Pittman*, [ECF No. 1]; *Carey*, [ECF No. 1]; *Pettis*, [ECF No. 1]; *McMoore*, [ECF No. 1].  Many of those causes of action include multiple discrete (and nearly identical) claims for relief.  Because each of the plaintiffs sought IFP status, *Pittman*, [ECF No. 5]; *Carey*, [ECF No. 2]; *Pettis*, [ECF No. 2]; *McMoore*, [ECF No. 2], their complaints were subject to preservice review pursuant to § 1915(e)(2)(B).  In an order dated February 27, 2023, the Court adopted the lengthy Report and Recommendation of Magistrate Judge Tony N. Leung and dismissed the bulk of the causes of action and claims for relief pursuant to § 1915(e)(2)(B).  *See Pittman*, [ECF Nos. 26, 20]; *Carey*, [ECF Nos. 28, 23]; *Pettis*, [ECF Nos. 29, 23]; *McMoore*, [ECF Nos. 25, 19].

A hodgepodge of claims survive preservice review.  Nearly all of those claims are brought against defendants in their official capacities as agents of the State of Minnesota and survive only insofar as plaintiffs seek prospective injunctive relief from the official-capacity defendants.  Those claims are as follows:

1.  Plaintiffs' second cause of action related to alleged restrictions on free speech, including (a) claims that defendants unlawfully censored and restricted access to newspapers and magazines; (b) claims that defendants have restricted plaintiffs' ability to associate with others; and (c) claims that plaintiffs have been wrongfully prohibited from wearing certain items of clothing.

-8-

2.      Plaintiffs' third cause of action related to allegedly unlawful seizures of items by MSOP officials.

3.      Plaintiffs' fifth cause of action related to the alleged monitoring of legal communications between plaintiffs and their attorneys.

4.      Plaintiffs' ninth cause of action, which contends that various conditions at MSOP amount to cruel and unusual punishment.

5.      Plaintiffs' eleventh cause of action, which contends that plaintiffs' due process rights have been violated.

6.      Plaintiffs' seventeenth cause of action, which contends that the totality of conditions at MSOP, taken together, amount to a constitutional violation.

Along with these official-capacity claims, plaintiffs also raise three claims against specific defendants in their individual capacities. Two of the individual-capacity claims are raised by all four plaintiffs, while the third is raised only by Carey. Those individual-capacity claims are as follows:

1.      Plaintiffs' claim against defendants Julie Rose, Rob Rose, and Terry Kneisel, found within the second cause of action, alleging that defendants repeatedly and intentionally delayed the distribution of plaintiffs' mail.

2.      Plaintiffs' claim against defendants Rob Rose and Julie Rose alleging that those defendants denied plaintiffs access to the gym as punishment without due process of law.

3.      Carey's claim against defendant Seth Doe alleging that Doe grabbed him from behind "without provocation" and sprayed him with a chemical irritant in the face "without warning."

Defendants assert that these remaining claims are each barred by the doctrine of res judicata following the entry of judgment in *Karsjens*. In addition, defendants argue

-9-

that even if res judicata does not bar these claims, the claims should nevertheless be

dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  LEGAL ANALYSIS

### A.  Res Judicata

Under the doctrine of res judicata, "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have

been raised in that action."  *Yankton Sioux Tribe v. U.S. Dep't of Health and Hum. Servs.*,

533 F.3d 634, 639 (8th Cir. 2008) (citation omitted).  To establish that a claim is barred by

res judicata, a party must show: "(1) the first suit resulted in a final judgment on the

merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same

parties (or those in privity with them); and (4) both suits are based upon the same

claims or causes of action."  *Id.* (citation omitted).  Defendants contend that the claims

raised in these lawsuits are substantially duplicative of claims against MSOP that were

fully litigated in *Karsjens* and are therefore subject to dismissal on res judicata grounds.

The first three elements of res judicata plainly apply to each of the official-

capacity claims raised in these lawsuits:  (1) The *Karsjens* litigation resulted in a

dismissal of all claims raised in that proceeding with prejudice and on the merits.

(2) The *Karsjens* court was a court of competent jurisdiction.  And (3) plaintiffs, as

members of the class in *Karsjens*, were parties to that litigation, while defendants, in

their official capacities, are agents of the same governmental entity (namely, the State of Minnesota) as were the official-capacity defendants in *Karsjens*.

The final element of res judicata—whether these lawsuits are based on the same claims or causes of action as *Karsjens*—requires somewhat more discussion.  Some of the official-capacity claims that remain pending in these lawsuits appear to be wholly duplicative of claims that were litigated in *Karsjens*.  *See Karsjens*, Third Amended Complaint ("TAC") at ¶ 138b [ECF No. 635] (intentional and unnecessary delay in the mail); *id.* at ¶¶ 198, 311 (censorship of and restricted access to magazines and newspapers); *id.* at ¶¶ 138u, 309 (policies restricting MSOP clients from associating with each other); *id.* at ¶ 138w (policies restricting what MSOP clients are allowed to wear); *id.* at ¶ 161b, f (policies related to monitoring MSOP clients' telephone calls and legal mail).  Res judicata clearly bars these claims.  Having lost as class members, plaintiffs are barred from relitigating these claims individually.

But even if the claims raised in these proceedings are not *exactly* the same as those litigated in *Karsjens*, res judicata "precludes the parties or their privies from relitigating issues that were or *could have been* raised in that [initial] action."  *Plough ex rel. Plough v. W. Des Moines Comm. Sch. Dist.*, 70 F.3d 512, 515 (8th Cir. 1995) (citation omitted)  (emphasis added).  "[A] claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim."  *Yankton Sioux Tribe*, 533 F.3d at 641

-11-

(citation omitted).  Put another way, plaintiffs' claims need not be absolutely identical to the claims raised in *Karsjens* for their claims to be barred by res judicata.

In determining whether claims are sufficiently similar for purposes of res judicata, courts must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations."  *United States v. Gurley*, 43 F.3d 1188, 1196 (8th Cir. 1994) (citation omitted).  Each of the official-capacity claims raised in these lawsuits meets that standard.  *Karsjens* was a wide-ranging attack on the legality of nearly every operational feature of MSOP.  The *Karsjens* class sought changes to each of the policies that are challenged in the lawsuits brought by Ha'Keem, Carey, Pettis, and McMoore.  To the extent that the claims in these four lawsuits are not precisely identical to the claims in *Karsjens*, nothing prevented plaintiffs from including within the *Karsjens* litigation those facets of the claims that they now seek to litigate.[3]

Plaintiffs do not seriously dispute that their official-capacity claims stem from the same nucleus of operative facts as the claims litigated in *Karsjens*.  Plaintiffs instead argue that the court in *Karsjens* applied the wrong legal standard in dismissing those

---

[3] To be clear:  The Court does not suggest that *Karsjens* forever precludes a claim challenging the legality of conditions at MSOP.  To litigate such a claim, however, a plaintiff who was a member of the *Karsjens* class must show that the claim could not have been litigated within *Karsjens*—because, for example, the challenged policy did not exist at the time of *Karsjens*.  Plaintiffs cannot make that showing here.

claims due to an error made by class counsel.  *Pittman*, [ECF No. 43].  But res judicata precludes not only attempts to relitigate identical claims, but "attempt[s] to relitigate the same claim under a different legal theory of recovery." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 674 (8th Cir. 1998) (citation omitted).  It is clear that the original *Karsjens* litigation and the four complaints at issue here challenge the same MSOP policies and seek the same relief: a declaration that the policies are unlawful.  Res judicata, therefore, bars all of plaintiffs' remaining official-capacity claims.[4]  *See also Jamison v. Ludeman*, No. 11-CV-2136 (PAM/DTS), 2023 WL 2088302, at *2 (D. Minn. Feb. 17, 2023) (concluding that plaintiff's claims were barred by claim and issue preclusion because they either were or could have been raised in *Karsjens*); *White v. Dayton*, Case Nos. 11-CV-3702 (NEB/DJF), 11-CV-3714 (NEB/DJF), 12-CV-0062 (NEB/DJF), 2023 WL 3615247, at *7–8 (D. Minn. May 24, 2023) (same), *report and recommendation adopted by* 2023 WL 4186313 (D. Minn. June 26, 2023).

For these reasons, plaintiffs' official-capacity claims are dismissed with prejudice and on the merits.  *See Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir. 1995) (explaining that

---

[4] To the extent that Ha'Keem contends that class counsel did not adequately represent him or those similarly situated to him (namely, MSOP clients who are persons of color), Ha'Keem's dissatisfaction with the theories and arguments raised by class counsel in *Karsjens* does not prevent application of res judicata.  A party cannot relitigate claims that are barred by res judicata merely because he is dissatisfied (for whatever reason) with his counsel's performance in the prior litigation.  Were it otherwise, the doctrine of res judicata would be deprived of almost all effect, as losing parties could always claim that their counsel should have done something differently.

a dismissal with prejudice "operates as a rejection of the plaintiff's claims on the merits").

### B. Individual-Capacity Claims

The plaintiffs in *Karsjens* sued the defendants in their official capacities only. *Karsjens*, [ECF No. 635].  "Litigation involving the government is generally binding with respect to governmental officials who are sued in their official capacities in later actions."  *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987).  But "a judgment against a government does not bind its officials sued in their personal capacities."  *Id.*  Because defendants in their *individual* capacities were not parties to *Karsjens*, res judicata does not preclude plaintiffs from asserting individual-capacity claims against them here.

There are three individual-capacity claims remaining in this litigation: (1) plaintiffs' claim against defendants Julie Rose, Rob Rose, and Terry Kneisel in their individual capacities for allegedly repeatedly and intentionally delaying the distribution of plaintiffs' mail; (2) plaintiffs' claim against defendants Rob Rose and Julie Rose for allegedly denying them access to the gym as punishment without due process of law; and (3) plaintiff Carey's claim against defendant Seth Doe alleging that Doe grabbed him from behind "without provocation" and sprayed him with a chemical irritant in his face "without warning."  *Pittman*, [ECF No. 26]; *Carey*, [ECF No. 28]; *Pettis*, [ECF No. 29]; *McMoore*, [ECF No.  25].

-14-

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  If the factual allegations are not sufficient to "nudge[] [plaintiffs'] claims across the line from conceivable to plausible," "their complaint must be dismissed." *Id.* at 570.

### 1.  Mail Delays

Each plaintiff alleges that "if he asks when the mail will be distributed, MSOP staff, usually the morning shift including defendants Mr. Rose and Mr. Kneisel, will purposefully and maliciously delay delivering the mail in a blanket attempt to frustrate, anger and harass [plaintiff]." *Pittman*, ¶ 94 [ECF No. 1]; *Carey* ¶ 95 [ECF No. 1]; *Pettis* ¶ 94 [ECF No. 1]; *McMoore* ¶ 94 [ECF No. 1].  Each plaintiff further alleges that "Mr. Rose's delay of these letters, which occurred more frequently than the times that [plaintiff] actually monitored, was unnecessary and was not the result of any workload problems or other concerns that may have prevented Mr. Rose from monitoring the delivery of mail." *Pittman*, ¶ 95 [ECF No. 1]; *Carey* ¶ 96 [ECF No. 1]; *Pettis* ¶ 95 [ECF

-15-

No. 1]; *McMoore*, ¶ 95 [ECF No. 1].  Defendants contend that these allegations are insufficient to state a claim on which relief may be granted.

The Court agrees.  "[R]elatively isolated or short-term disruption in the delivery or receipt of an inmate's mail does not rise to the level of a constitutional deprivation." *Blake v. Stepp*, Case No. 3:20-CV-00178, 2020 WL 2950411, at * 2 (S.D. W.Va. Apr. 30, 2020) (listing cases), *report and recommendation adopted by* 2020 WL 2945556 (S.D. W.Va. June 3, 2020); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (plaintiff failed to establish First Amendment claim based on delays in mail delivery where those delays were sporadic and there were no allegations that the delays stemmed from some content-based prison policy or practice).  Plaintiffs are not constitutionally entitled to immediate delivery of their mail.  To establish a violation of their constitutional rights, plaintiffs must plead non-conclusory facts showing that the delays were systemic or unreasonable or based on unlawful content restrictions or the like.  Plaintiffs in these matters fail to allege any concrete facts about any of the alleged delays in mail delivery, such as when they happened or how long their mail was delayed.  Without such allegations, plaintiffs cannot state a viable claim for relief stemming from the mail delays.

2.  Denial of Gym Access

Plaintiffs allege that defendant Rob Rose denied them access to the gym "as punishment for some alleged or perceived violation of some rule or some other misbehavior" "[o]n at least two . . . occasions" without providing "any of the constitutionally required due process." *Pittman* ¶¶ 67–68 [ECF No. 1]; *Carey* ¶¶ 68–69 [ECF No. 1]; *Pettis* ¶¶ 67–68 [ECF No. 1]; *McMoore* ¶¶ 67–68 [ECF No. 1].  As a result, plaintiffs seek monetary relief from Rose in his individual capacity.[5]  To establish a violation of procedural due process,[6] plaintiffs must show that (1) they were deprived of a protected liberty or property interest and (2) defendants denied them the process they were due.  *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

"Protected liberty interests may arise from two sources — the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation and quotation marks omitted).  "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the

---

[5] To the extent that plaintiffs challenge an MSOP *policy* of depriving civil detainees of gym time as punishment, res judicata bars that claim for the reasons described above with respect to plaintiffs' official-capacity claims.

[6] Insofar as plaintiffs might be contending that their substantive due process rights have been violated, the Court finds that the temporary denial of access to the gym is not conduct "shocking to the contemporary conscience."  *Bandy-Bey v. Crist*, 578 F.3d 763, 767 (8th Cir. 2009) (citation and quotation marks omitted).

nature of those conditions themselves in relation to the ordinary incidents of prison

life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citation and quotation marks

omitted).  This inquiry requires courts to consider whether the restriction "present[s] a

dramatic departure from the basic conditions of" the inmate's detention.  *Id.* (citation

omitted).  "Disciplinary measures that do not substantially worsen the conditions of

confinement of a lawfully confined person are not actionable under the due process

clause . . . regardless of whether the confinement is criminal or civil."  *Miller v. Dobier*,

634 F.3d 412, 414–15 (7th Cir. 2011).

This Court previously considered whether restrictions on access to the gym

implicate a protected liberty interest in the context of MSOP detention and concluded

that they do not.  *See Miles v. Korby*, No. 17-CV-0263 (PJS/LIB), 2017 WL 1169639 (D.

Minn. Mar. 3, 2017), *report and recommendation adopted by* 2017 WL 1169536 (D. Minn.

Mar. 28, 2017).  In *Miles*, plaintiffs filed a 42 U.S.C. § 1983 action claiming that the denial

of privileges by MSOP officials—specifically visitation privileges and use of the

gym—amounted to a deprivation of a state-created liberty interest without due process

of law.  *Id.* at *1.  This Court disagreed, concluding that the loss of access to the gym

"only incidentally restricts the conditions of their confinement." *Id.* at *3.  "[A]lthough

detainees may have a liberty interest in some access to exercise, what is at issue in this

matter is not Plaintiffs' access to *exercise*, but instead their access to the use of a

particular gym." *Id.* at *3 (cleaned up).

The Court finds no reason to depart from this reasoning here.  Plaintiffs complain

that they were denied access to the gym, not that they were denied the ability to

exercise.   And even if MSOP established some procedure that is triggered if access is

denied, any failure by MSOP to adhere to that procedure would not, in itself, create an

independent substantive right.  *Id.*; *see also Olim v. Wakinekona*, 461 U.S. 238, 250–51

(1983) ("The State may choose to require procedures for reasons other than protection

against deprivation of substantive rights, of course, but in making that choice the State

does not create an independent substantive right.").  In short, plaintiffs have no liberty

interest in access to a gym, and thus their individual-capacity claims regarding gym

access fail.[7]

---

[7] The Court finds that plaintiffs have failed to state a plausible claim that short-term delays in mail delivery or being deprived of access to a gym as punishment constitutes a constitutional injury.  Even if plaintiffs had adequately pleaded such a claim, however, defendants would be entitled to qualified immunity unless plaintiffs could show that their constitutional right to immediate delivery of their mail and access to the gym were clearly established when they initiated these actions in 2011 and 2012.  *See Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) ("Qualified immunity shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." (citation and quotation marks omitted)).  Plaintiffs have made no such showing.

### 3.  Individual-Capacity Claim Against Seth Doe

Finally, the Court turns to plaintiff Carey's claim against Seth Doe in his individual capacity for grabbing him from behind "without provocation" and spraying him in the face with a chemical irritant "without warning." *See Carey* [ECF No. 28].

It is unclear whether "Seth Doe" is the name of a person or if "Seth Doe" is instead a placeholder for an otherwise unidentified individual.  The record shows that service on "Seth Doe" in his *official* capacity as an agent of the State of Minnesota was effected by service on the Minnesota Attorney General's Office on March 2, 2023. *Carey*, [ECF No. 29].  There is no basis in the record for believing that Seth Doe (if he exists) has ever been served in his *individual* capacity.

Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The 90-day period in which to serve defendants expired long ago.  The Court ordered service on Seth Doe in his individual capacity on January 27, 2023, and Carey was alerted to the failure to serve Seth Doe in defendants' motion to dismiss.  Carey failed to respond to that argument or (as far as the record reflects) take any action to

effect service of process on Seth Doe.  "A district court has the power to dismiss a case for failure to comply with its rules." *Marshall v. Warwick*, 155 F.3d 1027, 1030 (8th Cir. 1998); *see also Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir.1983) (per curiam) (explaining that pro se litigants are not excused from compliance with procedural and local rules).  Accordingly, Carey's claim against defendant Seth Doe in his individual capacity is dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT**:**

1. Defendants' motions to dismiss in *Pittman* [ECF No. 29], *Carey* [ECF No. 31], *Pettis* [ECF No. 32], and *McMoore* [ECF No. 28] are GRANTED.

2. Plaintiff Maikijah Ha'Keem's Motion To Not Dismiss the Complaint in *Pittman* [ECF No. 43] is DENIED**.**

3. These actions—*Pittman v. Swanson*, Case No. 11-CV-3658 (PJS/TNL) [ECF No. 1]; *Carey v. Swanson*, Case No. 11-CV-3711 (PJS/TNL) [ECF No. 1]; *Pettis v. Swanson*, Case No. 11-CV-3728 (PJS/TNL) [ECF No. 1]; *McMoore v. Swanson*, Case No. 12-CV-0318 (PJS/TNL) [ECF No. 1]—are DISMISSED as follows:

      a.      Carey's individual-capacity claim against Seth Doe is DISMISSED

      WITHOUT PREJUDICE.

      b.      All other claims are DISMISSED WITH PREJUDICE AND ON THE

      MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October <u>25</u>, 2023           <u>s/Patrick J. Schiltz</u>
                            Patrick J. Schiltz, Chief Judge
                            United States District Court